UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )          No. 6:07-CR-13-DCR-5
                                )          No. 6:10-CV-7128-DCR
v.                              )
                                )          RECOMMENDED DISPOSITION
DEIDRE CLARK,                   )
                                )
            Defendant.          )
                                )

                        ***   ***   ***   ***

On July 15, 2010, Movant Deidre Clark, proceeding pro se, filed a motion seeking to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.[1]  (D.E. 331). The United States filed a response to the § 2255 motion on September 2, 2010 (D.E. 335), to which Movant has filed a reply (D.E. 339).  Pursuant to local practice, this matter was referred to the undersigned for a recommended disposition.  28 U.S.C. § 636(b).  For the reasons that follow, Movant has failed to establish that she is entitled to relief pursuant to 28 U.S.C. § 2255.  Therefore, the Court **RECOMMENDS** that her motion be **DENIED**.

---

[1]      Although Movant's motion was not docketed by the district court clerk until July 20, 2010, Movant declared under penalty of perjury that she placed the motion in the prison's mailing system on July 15, 2010.  (D.E. 331 at 13).  Thus, the Court will treat the motion as having been filed on July 15, 2010.  *See Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999) (citing *Houston v. Lack*, 487 U.S. 266, 270-72 (1988)).

# I. BACKGROUND

On March 29, 2007, a federal grand jury returned a second superseding indictment charging Movant, in Count 17, with making a false statement to a federally licensed firearm dealer in violation of 18 U.S.C. § 924(a)(1)(A) and, in Count 20, with possession of an unregistered sawed-off shotgun in violation of 26 U.S.C. § 5861(d). (D.E. 59). Movant faced maximum terms of imprisonment of 5 years and 10 years on Counts 17 and 20 respectively. (D.E. 263 at 2). On September 6, 2007, Movant entered a nolo contendere plea to Count 17 and pled guilty to Count 20. (D.E. 159). After a comprehensive plea colloquy before District Judge Reeves, Movant's pleas were accepted by the Court. (*Id.*).

Prior to sentencing, "[a] probation officer prepared a presentence report (PSR), which calculated [Movant's] base offense level as 20." *United States v. Clark*, No. 08-5720, slip op. at 1 (6th Cir. July 28, 2009). This offense level was based, in part, upon the probation officer's determination that Movant "was a prohibited person, that is, an unlawful user of a controlled substance . . . ." (D.E. 278 at 26). In addition, the PSR recommended (1) a two-level increase for obstruction of justice on grounds that Movant "creat[ed] fraudulent, forged, documents designed to have her husband released from jail" and "created statements and forged the signatures of potential witnesses in an apparent effort to provide an alibi[] for George Clark" (*id.* at 25); (2) a two-level increase because the offense involved a destructive device (*id.* at 26); and (3) a four-level increase for possessing or transporting a firearm with knowledge that it would be used or possessed in connection another felony offense; to wit, possession of a firearm by a

person having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (*id.* at 48). After adjusting the offense level downward by three levels for acceptance of responsibility (*id.* at 26), the probation officer calculated a total offense level of 25 and a criminal history category of II resulting in a total Guidelines range of 63 to 78 months imprisonment (*id.* at 34).

At sentencing, Movant objected to the probation officer's determination that she was a prohibited person. (D.E. 243-2 at 1-2). Additionally, Movant argued that she should not be subject to increases for obstruction of justice and for possessing or transporting a firearm with knowledge that it would be used or possessed in connection another felony offense. (*Id.* at 2-4). Judge Reeves overruled each of these objections to the PSR.[2] (D.E. 266). Furthermore, Judge Reeves concluded that at no time had Movant "fully and completely accepted responsibility for her actions or stated those to the Court or acknowledged those to the Court, but she's done quite the contrary." (D.E. 295 at 20). Therefore, he determined that Movant was not entitled to any downward adjustment for acceptance of responsibility.[3] (*Id.* at 20-21). In light of those findings, Movant was subject to an offense level of 28 and a criminal history category of II, yielding a Guidelines range of 87 to 108 months imprisonment. (*Id.* at 21). Judge Reeves ultimately sentenced Movant to 108 months imprisonment.[4] (D.E. 270).

---

[2]     Judge Reeve's decision to overrule Movant's objections was affirmed by the Sixth Circuit on appeal. *Clark*, slip op. at 3-4.

[3]     This decision was likewise affirmed on appeal by the Sixth Circuit. *Clark*, slip op. at 4-5.

[4]     The 108-month term consisted of 60 months as to Count 17, and 108 months as to Count 20, which were ordered by Judge Reeves to be served concurrently. (D.E. 270 at 2).

Despite a term of the plea agreement barring Movant from collaterally attacking her nolo contendere and guilty pleas and conviction (D.E. 263 ¶ 8 ("Defendant waives the right to . . . attack collaterally the guilty plea and conviction.")), Movant has filed the instant motion doing just that. She argues that her conviction should be vacated because her pleas were not knowing and voluntary and were the product of ineffective assistance of counsel. Additionally, Movant argues that her attorneys rendered ineffective assistance at sentencing and on appeal and that she is therefore entitled to collateral relief.

## II. DISCUSSION

Generally speaking, a prisoner has a statutory right to collaterally attack her conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) ("both the right to appeal and the right to seek post-conviction relief are statutory rights"). For a federal prisoner to prevail on a § 2255 claim, she must show that:

> the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . .

28 U.S.C. § 2255. If the movant alleges a constitutional error, she must establish by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), that the error "had a substantial and injurious effect or influence on the proceedings," *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). However, if the movant alleges a non-constitutional error, she "must establish a fundamental defect which inherently results in a complete miscarriage of

justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (quotation omitted).

## A. Validity of Pleas and Conviction

Like other statutory and constitutional rights, the right to collaterally attack a sentence or conviction may be waived. *Id.* at 489 ("a defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief."). As a result, where a movant has waived "the right to collaterally attack his or her sentence, he or she is precluded from bring[ing] a claim of ineffective assistance of counsel based on 28 U.S.C. § 2255." *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001). Only where the movant "articulate[s] a basis for attacking the validity of h[er] plea" may she escape the consequences of the waiver provision. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (noting that "it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself."). Thus, a movant that has otherwise waived the right to collaterally attack her conviction and sentence, must "raise[] a challenge that goes to the validity of h[er] waiver, such as a claim that the waiver was involuntary or the product of ineffective assistance of counsel." *Id.*

### i. *Movant's Pleas were Knowing and Voluntary* (Grounds 1-2)

First, Movant argues that her pleas were invalid because she did not understand the consequences of entering those pleas. For a guilty plea and plea of nolo contendere to be valid, they must be "both knowing and voluntary." *Parke v. Raley*, 506 U.S. 20, 28 (1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969)); *see also Fautenberry v.*

*Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008).  To that end, the plea must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Parke*, 506 U.S. at 29 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)) (internal quotation marks omitted).

Here, it is without question that Movant's pleas were voluntary—that is, the pleas "did not result from force, threats, or promises (other than promises in a plea agreement)."  Fed. R. Crim. P. 11(b)(2); *see also United States v. Lalonde*, 509 F.3d 750, 761 (6th Cir. 2007) ("The purpose of [Rule 11(b)(2)] is to assist the district cou[r]t in determining whether a defendant's guilty plea is truly voluntary and to produce a complete record of the factors relevant to this determination." (quotation omitted)). During rearraignment proceedings on September 6, 2007, Judge Reeves confirmed that Movant's decision to change her plea was voluntary.

| THE COURT: | Other than what's contained in this plea agreement, has anyone else made any promises to you to induce you or convince you to enter into the plea agreement? |
|---|---|
| DEFENDANT: | No, sir. |
| THE COURT: | Has anyone made any threats or in any way forced you to enter into the plea agreement? |
| DEFENDANT: | No, sir. |
| THE COURT: | Has anyone told you that you would receive a specific sentence in exchange for entering a plea of guilty in this case? |
| DEFENDANT: | No, sir. |

(D.E. 294 at 17:4-14).   Significantly, Movant does not now contend that she was improperly threatened or coerced into changing her plea.

Instead, Movant primarily argues that her plea was unknowing.  She states that her attorney and the Court did not fully explain the meaning of the term "attack collaterally," as that term was used within the waiver provision of the plea agreement.  (D.E. 331-1 at 4-8).  Without understanding the meaning of that term, Movant insists that her waiver of the right to attack collaterally her plea and conviction could not have been done knowingly.  (*Id.*).  However, there is no merit to this argument.  The record reveals that Movant, during the Rule 11 plea colloquy, was fully apprised of the meaning of the term "attack collaterally."

> THE COURT:   And then, in paragraph 8, you waive the right to appeal and the right to *attack collaterally, which means the right to file a separate lawsuit to challenge, either the guilty plea or the conviction*, but you reserve the right to appeal the final sentence in the case.

(D.E. 294 at 24:6-10 (emphasis added)).   Thus, despite Movant's insistence that she "does not have any background in criminal law, much less habeas jurisprudence," (D.E. 331-1 at 6), Judge Reeves explained the waiver in terms that even a lay person could understand: Movant could not, by way of appeal or separate lawsuit, challenge her guilty plea or conviction.

Movant's argument that she did not understand the waiver provision in spite of the clear and concise explanation given by Judge Reeves is unavailing.  Immediately after explaining the waiver provision of the plea agreement, Judge Reeves asked Movant whether she understood the rights she was waiving.  (D.E. 294 at 24:11-13).  Without

qualification, Movant answered affirmatively. (*Id.* at 24:14). Furthermore, Judge Reeves verified that Movant reviewed and discussed the plea agreement with her attorney, and that, in light of those discussions, she understood the agreement.

> THE COURT: Before you signed this plea agreement, did you have an opportunity to read over it?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And did you discuss it with your attorney?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And do you feel like you understand the terms of your plea agreement?
>
> DEFENDANT: Yes, sir.

(*Id.* at 13:20-14:2). Likewise, by signing the plea agreement, Movant acknowledged that she "underst[ood] th[e] Agreement, that her attorney ha[d] fully explained th[e] Agreement to her, and that her entry into th[e] Agreement [was] voluntary." (D.E. 263 ¶ 14).

It is well established that where the court has scrupulously followed the procedure required by Rule 11, "'the defendant is bound by h[er] statements in response to that court's inquiry.'" *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). Here, the Rule 11 inquiry performed by Judge Reeves was scrupulous. Moreover, Movant's responses to that inquiry establish that she consented in open court to the terms of the plea agreement, she understood the consequences of her pleas, and she consciously chose to plead nolo contendere and guilty

rather than go to trial. *See id.* at 92. Therefore, Movant's pleas were both knowing and voluntary.

       *ii.*       *Movant's Pleas were Not the Product of Ineffective Assistance of Counsel (Grounds 4 and 6)*

Next, Movant argues that her conviction should be vacated because her change of plea was the product of ineffective assistance of counsel. In particular, Movant asserts that her attorney advised her to plea nolo contedere to Count 17, but did not discuss that doing so "may create an unnecessary impediment to Movant's receipt of credit for acceptance of responsibility." (D.E. 331-1 at 11). In a similar vein, Movant argues that her attorney was ineffective in the plea process because he failed to adequately advise Movant of the criminal charges, the Sentencing Guidelines, and her sentencing exposure under the Guidelines. (*Id.* at 14).

A claim for ineffective assistance of counsel has two components. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the second component, "the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. Where, as here, the ineffective-assistance claim arises out of the plea process, a § 2255 movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A defendant has the burden of making both showings. *Strickland*, 466 U.S. at

687. However, "[w]hen deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697).

Movant's first argument that she received ineffective assistance during the plea process is easily disposed of based on the substance of the plea colloquy. Movant insists that she did not understand that pleading nolo contendere could affect her ability to receive acceptance of responsibility credit. The transcript of the plea colloquy, however, conclusively belies this argument. Initially, the Court confirmed that Movant's counsel was aware of the possible effect a nolo contendere plea would have on receiving credit for acceptance of responsibility.

> THE COURT: All right. I do want to advise you—If you haven't had a chance to discuss this previously, I do want to advise you that, of course, that [pleading nolo contendere] does call into question acceptance of responsibility credit under Section 3E1.1 of the Sentencing Guidelines. I know there is language in the plea agreement to the effect that the parties would make that recommendation at the time of sentencing. I don't want there to be any misapprehension about that issue. It's just one factor for the Court to consider. It's not dispositive, but it is a factor for the Court to consider as to whether it should ultimately award credit for acceptance of responsibility in a situation that involves at least one count to which the party is entering an Alford or a nolo contendere plea, and everyone understands that; correct?
>
> . . .
>
> MR. CASTLE: Yes, Your Honor.

(D.E. 294 at 3:5-20). Speaking directly to Movant, the Court also confirmed that she was aware of the effect pleading nolo contendere might have on acceptance of responsibility credit.

THE COURT: Now, before I go through the penalty provisions with you in the plea agreement, there are a couple of things about the plea agreement that I do want to confirm that you understand. One is something that we talked about at the beginning of the hearing, and that is with respect to a plea of what's called nolo contendere, and that's where a person admits that there is sufficient evidence to convict but does not admit basically to the charges—

DEFENDANT: Uh-huh.

THE COURT: —that that could result in you not receiving what's called acceptance of responsibility credit under the Sentencing Guidelines, and that's one factor for the Court to consider. The Court has to look at the entire case, but that is a factor that the Court has to consider at the time of sentencing. And you understand that and you understand what we were talking about just a moment ago?

DEFENDANT: Yeah.

. . .

THE COURT: All right. Well, let me again go over that one point that I raised with you earlier, because you seemed like that maybe you didn't understand everything I was saying, and that's about acceptance of responsibility. And basically when a guideline calculation is made, of course, there will be the base offense level calculation, there may be some additional factors that either add to or take away from that number. Of course, as far as you're concerned, the more that can be taken away the better, because it lowers—

DEFENDANT: Yeah.

| THE COURT: | —the total offense level in the case.  Now, one factor for the Court to consider in all that is what's called acceptance of responsibility, and that either provides for a two-level or three-level reduction under the facts of a particular case.  And what I was asking you about earlier and the point I was trying to make with you and with the attorneys is that in terms of acceptance of responsibility, one factor that the Court considers in a situation such as this, where there's an indication of a plea of nolo contendere, is that may prevent the defendant from getting that full acceptance of responsibility credit.  By not admitting to all the facts, the underlying charges in the case, that can affect whether a person gets that or not. It's only one factor for the Court to consider, it has to look at the entire case, but it is a factor, and it's a little bit unusual to have a nolo plea in a case and that's why I raised it with the parties. And do you understand all of that? |
|---|---|
| DEFENDANT: | Yeah, I understand it.  I don't like it, but I understand it. |
| THE COURT: | All right.  Well, I just want to make sure everyone understands the possibilities in the case before we go further. |

(*Id.* at 17:25-18:16, 21:7-22:13).

In light of this exchange, it is clear that Movant understood the potential effect that pleading nolo contendere would have on her ability to receive credit for acceptance of responsibility in advance of her plea.  Knowing of the potential consequences, however, she persisted in her decision to plead nolo contendere to Count 17.

Movant also argues that her attorney "failed to thoroughly explain to her the criminal charges against her."  (D.E. 331-1 at 14).  Movant does not precisely identify the basis for this argument.  At her rearraignment proceeding, however, Judge Reeves

discussed both counts 17 and 20 in detail (D.E. 294 at 27:20-29-9), he required the United States to discuss the facts supporting each of those counts (*id.* at 31:24-32:18), he had Movant answer factual questions related to each of those counts, and verified that Movant understood the essential elements of each count (*id.* at 29:11-31-12). Furthermore, Movant acknowledged that she received a copy of the second superseding indictment, that she had an opportunity to review the document and discuss it with her attorney, that she understood the charges contained in the document, and that she was satisfied with the advice from her attorney. (*Id.* at 12:13-13:5). In sum, Movant was fully advised of the criminal charges that were pending against her and, by her own admission, she understood the nature of those charges.

Next, Movant states that her attorney "unequivocally advised" her that her offense level under the Guidelines "would be reduced for acceptance of responsibility that was a concession specifically contained in the written plea agreement." (D.E. 331-1 at 15). Again, the record refutes Movant's position. Contrary to Movant's argument, paragraph 5 of the plea agreement simply does not provide that she would be entitled to credit for acceptance of responsibility. The agreement makes clear that the Guidelines calculation in that paragraph is *only a recommendation*. (D.E. 263 ¶ 5). Likewise, during the plea colloquy, Movant was informed that the calculation in paragraph 5 is a "recommendation [and] *is not binding upon the Court*." (D.E. 294 at 15:15-19 (emphasis added)). Furthermore, and as more fully discussed above, Judge Reeves explicitly advised Movant that pleading nolo contendere may have prevented her from receiving acceptance of responsibility credit.

Movant also argues that her attorney was deficient because he did not fully explain Movant's sentencing exposure and that he incorrectly advised Movant that her Guidelines range would be between 27 and 33 months based upon an offense level of 17 and a criminal history category of II. (D.E. 331-1 at 14). However, Movant does not suggest that the Rule 11 proceeding with respect to these matters was inadequate. That is significant because "the Rule 11 colloquy, which advises the defendant of the minimum and maximum imprisonment range under the statute and provides other necessary information about the Guidelines sentencing process, eliminates any arguable prejudice from an earlier estimate by counsel." *Gleason v. United States*, No. 2:08-cv-969, 2010 WL 1629943, at *14 (S.D. Ohio Apr. 20, 2010) (quotation omitted). Furthermore, where "the court explain[s] that the discretion as to what the sentence would be remain[s] entirely with the court," a defendant suffers no prejudice from an attorney's inaccurate prediction of his likely sentence. *Id.* (quotation omitted).

Here, Judge Reeves described to Movant the Guidelines-sentencing process in detail. (D.E. 294 at 20-23). He advised Movant that the probation office would prepare a PSR which would identify factors the Court would utilize to determine Movant's offense level and criminal history category. (*Id.*). He also advised that, prior to the issuance of the PSR, "it would be impossible for the Court or for [Movant's] attorney to know exactly what [her] guideline range would be." (*Id.* at 20:23-25). Even after computing a Guidelines range, Judge Reeves explained that the Guidelines would not be binding on the Court (*id.* at 20:2-6) and that the Guidelines themselves authorize the Court to depart upward or downward (*id.* at 22:14-18). Likewise, Judge Reeves explained that Movant

would not be able to withdraw her guilty plea should her attorney's prediction of the Guidelines range be inaccurate. (*Id.* at 24:24-25:2 ("but you would not be able to withdraw from your plea agreement if your attorney's prediction or your belief about your guideline range were to be inaccurate."); *see also id.* at 25:9-11 ("if the sentence that's ultimately imposed in the case would be more severe than you expect, that wouldn't be a reason to withdraw from your plea agreement.") Ultimately, Judge Reeves made clear that Movant could be sentenced to a term of imprisonment of up to five years on Count 17 and up to 10 years on Count 20—the statutory maximum terms of imprisonment authorized for those Counts. (*Id.* at 19:2-9). Notwithstanding the thorough explanation of the maximum penalties Movant faced provided by Judge Reeves and the unknowable nature of the Guidelines range prior to the issuance of the PSR, Movant entered pleas of nolo contendere and guilty to Counts 17 and 20 respectively. Thus, even if Movant's attorney failed to explain Movant's sentencing exposure or inaccurately predicted Movant's Guidelines range, the Rule 11 colloquy demonstrates that Movant did not suffer any prejudice.

### iii.    *Movant's Pleas are Valid*

Movant has failed to establish that her pleas were not knowing or voluntary or that they were the product of ineffective assistance of counsel. Thus, there is no basis for setting aside Movant's conviction.

## B.  Performance of Counsel During Sentencing Phase

Movant challenges her attorney's performance at sentencing and argues that, as a result of ineffective assistance of counsel, she should receive relief pursuant to § 2255.

These arguments do not fall within the scope of the specific waiver made by Movant. (D.E. 263 ¶ 8 (agreeing only to "waive[] the right to appeal and the right to attack collaterally the guilty plea and conviction . . . .") (emphasis added)); *Cf. Sams v. United States*, 255 F. App'x 955, 955-56 (6th Cir. 2007) (recognizing that defendant who waived right to collaterally attack guilty plea and conviction could still challenge his sentence). Therefore, the Court will address Movant's sentencing-related arguments below.

As described above, a claim for ineffective assistance of counsel has two prongs. Not only must Movant establish that her attorney's performance was deficient, but she must also establish that she was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687. To establish prejudice in this context, Movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

i.      *Movant was not Prejudiced by Attorney's "Failure" to Object to Alleged Breach of Plea Agreement (Ground 3)*

First, Movant argues that the United States breached paragraph 5 of the plea agreement by failing to recommend and subsequently move at sentencing for a three-level reduction of her offense level for acceptance of responsibility. (D.E. 331-1 at 9-11). Because this argument was not raised at the sentencing hearing or on direct appeal, it has been procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) (a

defendant procedurally defaults a claim "by failing to raise it on direct review"). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'" or that he is "'actually innocent'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). "The ineffective assistance of counsel constitutes cause." *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Movant attempts to establish cause by arguing that her attorney was ineffective for failing to object at sentencing to the alleged breach of the plea agreement.

Movant's argument primarily addresses the issues of whether the United States breached the plea agreement and whether her attorney's lack of objection to the alleged breach constituted deficient performance under the first prong of *Strickland*. Although Movant does assert that she was prejudiced by her attorney's failure to object because "she received a sentence 24-45 months longer than otherwise applicable" (D.E. 331-1 at 10), she provides absolutely no evidence to support this conclusory assertion. The short of the matter is that a recommendation and motion by the United States for a three-level adjustment for acceptance of responsibility would not have changed the fact that Movant had pled nolo contendere, that she had not fully and completely accepted responsibility, and that she had never admitted to the charged conduct—each of which Judge Reeves found compelling in deciding that Movant was not entitled to credit for acceptance of responsibility. (*See* D.E. 295 at 18, 20). Oddly enough, Movant indicates that she "would have exercised [her] Constitutional Right to a Jury Trial had it not been for

attorney Castle's deficient performance" (D.E. 331-2 ¶ 15) and she continues to maintain her innocence throughout her § 2255 motion and affidavit (*see, eg.*, D.E. 331-1 at 3 ("[Movant] was not guilty of count seventeen . . . .")). Thus, Movant had not and ***still*** has not accepted responsibility.

Put simply, even if the Court were to assume that Movant's attorney acted unreasonably in failing to object to the alleged breach of the plea agreement, Movant has not shown a reasonable probability that the result would have been different absent such a deficiency. There is not a reasonable probability that Judge Reeves would have found that Movant had accepted responsibility based only upon a bare recommendation and motion by the United States. The Seventh Circuit, for example, has held that a movant that does not receive credit for acceptance of responsibility suffers no prejudice when he maintains his innocence throughout his criminal proceeding and post-conviction proceedings:

> In order to receive a reduction in his sentence for acceptance of responsibility, Mr. Degaglia had to demonstrate clearly an acceptance of responsibility for his criminal conduct. *See* U.S.S.G. § 3E1.1. In contrast, throughout the proceedings below, Mr. Degaglia maintained his innocence. Indeed, in this § 2255 petition, Mr. Degaglia offered to submit "substantial evidence to prove his true lack of involvement in the activities improperly attributed to him." Therefore, even at this late stage Mr. Degaglia refuses to accept responsibility for his offense. Because Mr. Degaglia has failed to demonstrate prejudice, we need proceed no further in considering his claim of ineffective assistance of counsel.

*Degaglia v. United States*, 7 F.3d 609, 613 (7th Cir. 1993) (citation omitted). Like Mr. Degaglia, Movant, who maintained her innocence below and continues to maintain her

innocence in these post-conviction proceedings, has not shown that she was prejudiced by her attorney's so-called deficient performance.[5]

    *ii.*     *Attorney's Advice to Remain Silent at Sentencing was not Deficient Performance under* Strickland *Nor did it Prejudice Movant (Ground 5)*

Next, Movant argues that her attorney acted unreasonably when he advised Movant to remain silent at sentencing. (D.E. 331-1 at 13-14). According to Movant, having pled nolo contendere, she could not have received acceptance of responsibility credit unless she expressly accepted responsibility at sentencing, which she could not do if she remained silent. (*Id.*). However, Movant's attorney states that he advised Movant to "remain silent because in counsel's opinion she had a tendency to be combative and say things to incriminate herself." (D.E. 335-1 ¶ 2).

Movant does not dispute the basis for her attorney's advice. Furthermore, the evidence ***presented by Movant*** supports her attorney's concerns. Had Movant made a statement regarding acceptance of responsibility at sentencing, there is no reason to doubt that the statement would be any different than those made by Movant in her § 2255 motion and affidavit: "[Movant] was not guilty of count seventeen" (D.E. 331-1 at 3), Movant "did not make any false statements on the federal firearm purchase forms" (D.E. 331-2 ¶ 3), and Movant "specifically informed attorney Castle that the gun . . . purportedly seized from my residence on 2/28/07 was either overlooked during a

---

[5]     Movant also argues in support of Ground 3 that, by allegedly breaching the plea agreement, the United States forfeited the ability to enforce the waiver provision of the plea agreement. (D.E. 331-1 at 11). As described above, however, that argument was procedurally defaulted and Movant has failed to show cause and prejudice for that default. *See supra* § II.B.i. Additionally, all of the arguments raised by Movant in her § 2255 motion concerning ineffectiveness at sentencing fall outside the scope of the waiver and are addressed herein on the merits.

previous search at the residence, or was placed there by someone not me" (*id.* ¶ 4). These statements are consistent with what Movant told the Court during Rule 11 proceedings: "Sir, the only thing that I am willing to admit to is that in my home there was a sawed-off shotgun." (D.E. 294 at 29:11-12).

Fearing that Movant would likely make statements, such as those identified above, that would further evidence her lack of acceptance of responsibility, Movant's attorney made the tactical decision to advise her client to remain silent at sentencing. Based upon the evidence presented by Movant, she certainly has not rebutted the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.[6]

### iii. *Attorney's Performance at Sentencing Hearing was Not Deficient (Ground 7)*

Finally, Movant argues that her attorney's performance at sentencing was deficient because her attorney failed to properly object to the PSR. Movant first asserts that her attorney failed to argue that she was not a prohibited person—i.e., that she was not an unlawful user of a controlled substance. She claims that her attorney should have argued that a urinalysis specimen, which tested positive for marijuana use and formed, in part,

---

[6]     To be sure, Movant has also failed to establish that she was prejudiced by following her attorney's advice. Had Movant made the statements at sentencing that she now makes in her § 2255 motion and supporting affidavit, she would certainly be no more entitled to acceptance of responsibility credit than she was by remaining silent. Furthermore, Movant's vague attempt to describe what her testimony would have been had she not remained silent—i.e., that "she would have affirmatively expressed her acceptance of responsibility related to the criminal charges" (D.E. 331-1 at 14)—is insufficient to establish a reasonable likelihood that the result of the sentencing proceeding would have been different. *See, e.g.*, *United States v. Walters*, 333 F. Supp. 2d 1022, 1034 (D. Kan. 2004) ("The defendant's allegations on the content of his testimony are deficient in detail and do not sustain an inference of prejudice.").

the basis for the Court's prohibited-person finding, reflected marijuana use *after* the instant offense and not at the time of the instant offense. (D.E. 331-1 at 18). The problem with Movant's position is that her attorney made that specific argument at sentencing (D.E. 295 at 8-9), just as her attorney argued that the government did not present sufficient evidence that Movant had the requisite state of mind to warrant an offense-level enhancement pursuant to § 2K2.1(b)(6) of the Guidelines. (*Id.* at 12-13). And, although Movant now states that "[c]ounsel made no arguments against obstruction enhancement," her attorney actually did so. He argued "the validity of [the allegedly forged] document has not been proved or disproved by the government" and that "there's no evidence to suggest that [the documents] were ever submitted to any government agency or entity." (*Id.* at 5).

As Movant's attorney made the precise arguments that she now incorrectly claims were not made, Movant certainly cannot show that her attorney's performance was deficient or that any prejudice resulted. And, notwithstanding these arguments made by Movant's attorney, Judge Reeves, as well as the Sixth Circuit, found those arguments to be without merit. Movant's effort to raise these arguments now is a clear attempt to relitigate them in these post-conviction proceedings. However, "[i]t is . . . well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (citing *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996)).

Additionally, in a very vague and conclusory fashion, Movant argues that her attorney performed deficiently because he failed to investigate whether the documents the government used to establish that Movant obstructed justice were actually forged. On the contrary, her attorney states that "no witness testimony was submitted to the court regarding [Movant's] objections to the PSR because when counsel interviewed the witnesses; specifically, Sheriff Howard, Officer Gordan Asher, and Pre-Trial Officer Jenia Sizemore, they did not corroborate the information given by [Movant]." (D.E. 335-1 ¶ 7). He further states that "Officer Gordan Asher and Pre-trial Officer Jenia Sizemore, were interviewed and both indicated that they did not sign a statement on [Movant's] behalf." (*Id.*). Providing an ambiguous statement (*see* D.E. 331-2 at 6) purportedly signed by "Paul Howard Sheriff" at this point does not establish that the other documents found in Movant's possession, such as those of Gordan Asher or Jenia Sizemore, were not forged and, more importantly, it does not establish that her attorney's investigation in this matter was unreasonable.

As Movant's attorney made the precise arguments at sentencing that Movant now claims should have been made, and because Movant has failed to establish that counsel's investigation in the sentencing matters was unreasonable, she has failed to establish that she received ineffective assistance of counsel at sentencing.

## C.  Performance of Appellate Counsel

Movant also claims that her appellate counsel was ineffective. In Grounds 1 and 2, Movant claims that her appellate counsel was ineffective because he "failed to properly communicate with Movant prior to filing *Anders* brief" and that he failed to argue

"meritorious issues on appeal." (D.E. 331-1 at 22-24). There is simply no basis for the Court to evaluate these vague and conclusory allegations. Movant acknowledges that she sent letters to her appellate counsel and her appellate counsel acknowledged receipt of those letters. However, Movant neither indicates what other issues would have been presented on direct appeal had futher communications taken place nor provides a basis for determining whether those issues would have been meritorious. "[C]onclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief." *Brock v. White*, No. 2:09-CV-14005, 2011 WL 1565188, at *3 (E.D. Mich. Apr. 25, 2011).

Finally, in Ground 3, Movant argues that her appellate counsel was ineffective for failing to investigate and present arguments related to trial counsel's ineffectiveness. (D.E. 331-1 at 24). However, the Court has already concluded that Movant's trial counsel was not ineffective. *See supra* § II.A-B. Thus, her appellate counsel was not ineffective for failing to raise that issue on appeal. *United States v. Thomas*, 38 F. App'x 198, 202 (6th Cir. 2002) (noting that the failure to raise a futile argument does not constitute ineffective assistance of counsel).

In sum, Movant has failed to present sufficient evidence to establish that her appellate counsel was ineffective. Therefore, she is entitled to no relief on that basis.

### III. EVIDENTIARY HEARING

Movant has requested an evidentiary hearing on her § 2255 motion. "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)

(quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). As described above, the record conclusively shows that Movant is entitled to no relief. Thus, an evidentiary hearing is not required.

## IV.  CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)).

Here, Movant is not entitled to a certificate of appealability because no jurist of reason would find the Court's conclusions debatable or wrong. The record conclusively shows that Movant's pleas were knowing and voluntary, and not the product of ineffective assistance of counsel. Furthermore, Movant simply cannot show that her attorney's performance during the sentencing hearing was deficient. Finally, Movant's conclusory allegations related to her claims of ineffective assistance of appellate counsel simply do not provide a basis for habeas relief.

# V. CONCLUSION

Having reviewed Movant's § 2255 motion, the Court concludes that Movant has failed to make the requisite showing that would entitle her to relief. Therefore, the Court **RECOMMENDS** that Movant's motion to vacate her conviction and sentence (D.E. 331) be **DENIED**. The Court also recommends that the District Court **DENY** a Certificate of Appealability.[7]

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 19th day of July, 2011.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge

---

[7] In her prayer for relief, Movant also requests leave to expand the record "to include various affidavits and exhibits that support her § 2255 claims." (D.E. 331-1 at 24). However, Movant has already filed such affidavits and exhibits into the record which the Court has considered when formulating this Recommended Disposition. Therefore, this request is **DENIED as moot**.